[Civ. No. 2012. Fourth Appellate District.—August 12, 1937.]

VIRGIL A. MURRAY, Respondent, v. CIVIL SERVICE COMMISSION OF SAN DIEGO COUNTY et al., Appellants.

Thomas Whelan, District Attorney, and Carroll H. Smith, Deputy District Attorney, for Appellants.

Fred A. Steiner and Harrison G. Sloane for Respondent.

JENNINGS, J.—On October 19, 1936, Virgil A. Murray filed with the Superior Court of San Diego County his petition for a writ of mandate directed against the Civil Service Commission of San Diego County and the individual members thereof. In the petition thus filed the petitioner alleged that the county of San Diego is a body corporate and politic organized and existing under and by virtue of the terms of a freeholders' charter duly adopted and ratified and being in full force and effect at all times mentioned in the petition. Reference was made to article XVII of the county charter which created a county civil service and personnel department of the county government and established rules and regulations for employment and continuance in employment and for the removal of various officers and employees. Certain sections of this article which provide that the civil service of the county is divided into unclassified and classified service and which designate certain officers and employees of the county as members of the unclassified service were pleaded. In particular, section 81 of said article, to which more detailed reference will hereinafter be made, was set out. It was further alleged that the petitioner was duly appointed a deputy county clerk of San Diego County on May 11, 1934, and thereafter rendered service as such in the registration department of the county clerk's office by registering voters and by checking and filing registrations on designated dates for which service he was compensated by county warrants drawn by the county auditor which warrants were paid on presentation by the county treasurer and that petitioner was never removed from his position as deputy county clerk and received no notice of suspension or dismissal from such employment. It was also alleged that on January 7, 1935, petitioner was duly appointed a deputy sheriff of the county

of San Diego and thereafter performed the services required of him as such deputy sheriff and was compensated therefor at the rate of $150 per month and by reason of his appointment as deputy county clerk and his subsequent appointment as deputy sheriff petitioner held and claimed tenure in the classified civil service of the county. It was further alleged that petitioner had demanded that the defendants confirm him in his position as a deputy sheriff at the rate of pay which he had been receiving and that defendants certify his tenure and classification as such deputy sheriff but that defendants refused his demand and threatened to certify a list of persons in the classified civil service of said county and eligible for appointment thereto, omitting petitioner's name therefrom and further threatened to decline to certify petitioner's claim for compensation presently to become payable from said county for his services as deputy sheriff. The prayer of the petition was for the issuance of an alternative writ of mandate requiring defendants to show cause why they should not be compelled to confirm petitioner in the classified civil service of the county and to certify him, without examination, as a deputy sheriff at the specified rate of pay and upon failure of defendants to show cause that the alternative writ of mandate be made peremptory and permanent.

To the petition thus drawn defendants interposed a general demurrer, which was overruled and defendants thereupon filed their answer to the petition. The matter came on for hearing before the superior court, which arrived at the conclusion that it was the duty of the defendants to confirm petitioner in the position which he occupied on July 1, 1935, namely, the position of deputy sheriff of said county at a salary of $150 per month and to certify him to such position without examination. Judgment was thereupon rendered ordering defendants to issue a certificate of the department of civil service and personnel of the county of San Diego confirming petitioner in the classified civil service of said county and certifying him without examination to hold the position of deputy sheriff of said county at the above-stated salary. From this judgment the defendants appeal.

 Before proceeding to a consideration of the legal problems which are involved in this appeal certain observations respecting the factual background of the action may

properly be made. These observations pertain particularly to the exact character of the position to which petitioner was originally appointed by the county clerk and his tenure of employment in this position. The evidence showed that petitioner received from the county clerk a written appointment to the position of deputy county clerk. The document whereby petitioner received the aforesaid appointment contained no definition of the duties which petitioner was to perform. The instrument which bore the date May 11, 1934, recited that petitioner was appointed ''a deputy county clerk of San Diego County''. However, the evidence clearly indicated that the position to which petitioner was thus appointed was what is commonly known as a registration deputy in the county clerk's office and that the duties which he performed related exclusively to the registration of voters. It appeared, for example, that during the time petitioner was employed as a deputy county clerk he was instructed as to his duties by a deputy county clerk in the registration department of the county clerk's office and that part of the time he worked outside the county clerk's office receiving the usual affidavits of registration which the law requires to be filed as a necessary prerequisite to exercising the privilege of participating in elections and part of the time he worked in the registration department of the county clerk's office checking and filing affidavits of registration. The petitioner himself testified that for the work which he did outside the office he was to be paid at the rate of a fraction of a cent per name although he also testified that he had no agreement with the county clerk regarding the compensation which he was to receive. Petitioner further testified that from May 11, 1934, until September 27, 1934, he was regularly employed in the above-described employment and that after the last-mentioned date he received no notification to continue such work, although he stated that he remained at his home expecting to be notified by the county clerk's office that there was further need of his services. The petition alleged and the evidence showed that for the services which petitioner rendered between May 11, 1934, and September 27, 1934, he received four warrants. The first of these warrants was issued in June and was in the amount of $20. The second warrant was issued in July and was likewise for $20. The third warrant was in the amount of $17.50 and was issued in

August. The fourth warrant in the amount of $25 was drawn in October. The total amount represented by these warrants was $82.50 and the evidence showed that this amount constituted the entire compensation which petitioner received for his services during the above-mentioned period which comprised approximately 4½ months.

From the above-detailed evidence the conclusion is inescapable that petitioner's employment from May 11, 1934, to September 27, 1934, was purely temporary and that his service may properly be characterized as seasonal. From this it follows that despite the fact he received a written appointment as deputy county clerk on May 11, 1934, he did not thereby acquire a permanency of clerical tenure. (*Gilbert* v. *Civil Service Com.*, 61 Cal. App. 459 [215 Pac. 97]; *Rodrigue* v. *Rogers,* 4 Cal. App. 257 [87 Pac. 563, 564].)

With respect to the matter of the termination of his employment as a deputy county clerk petitioner contended that he was never notified either orally or in writing that his appointment as a deputy county clerk had been revoked. He therefore maintained that on January 7, 1935, when he was appointed a deputy sheriff, he occupied the status of deputy county clerk. The trial court expressly found that no written notice of discharge or revocation of his appointment as deputy county clerk was ever given and it was evidently the court's view that since petitioner had received a written appointment to the position from the county clerk a discharge or revocation in writing was required in order to terminate the employment. While it is true that the above-mentioned finding is amply supported by the evidence the nature of the petitioner's employment which was obviously temporary and seasonal renders it doubtful whether the trial court's view that a written revocation was required to effect a termination of employment is correct. However, it is our conclusion that this feature of the case is relatively unimportant on this appeal.

█ Petitioner's chief contention is that since he held an unrevoked written appointment to the position of deputy county clerk on January 7, 1935, the date on which he was appointed to the position of deputy sheriff he thereby became entitled to be confirmed in the last-mentioned position on July 1, 1935, without being required to take the examination prescribed for candidates for the position of deputy sheriff

by the Civil Service Commission. To support this contention he relies on the following language of section 81 of the county charter: "All appointive officers and employees of the county of San Diego or any subdivision thereof at the time this Article shall take effect, excepting those in the unclassified service as hereinbefore set forth in this Article, and who shall have been such for six months prior thereto, including copyists in the office of the County Recorder and all other employees, whether paid on a piece work basis or otherwise, shall be confirmed in such positions and shall be certified by the Civil Service Commission without examination and shall hold said positions until discharged, reduced, promoted or transferred in accordance with the provisions of this Charter relating to Civil Service."

Petitioner apparently maintains that a proper interpretation of the above-quoted language which he criticizes as being ambiguous, uncertain and grammatically incorrect indicates an intent on the part of the framers of the charter to continue in office all appointive officers and employees of the county without subjecting them to the unpleasant experience of a civil service examination. Petitioner's criticism of the grammatical construction of the language employed in section 81 is not without justification. The above-quoted portion of the section is not a model of correct syntax. It is apparent that the uncertainty of which petitioner complains arises largely from the inclusion in the sentence of the clause excepting persons in the unclassified service of the county from the provisions of the section. However, it must be observed that this clause is set off from the remainder of the context by commas, thereby indicating the definiteness of the exception and its express limitation to persons in the unclassified service of the county. Petitioner insists that the clause "who shall have been such for the 6 months prior thereto" preceded by the conjunctive "and" which is inserted in the sentence immediately after the exception must be construed as referring to the exception so that the meaning of the sentence would be that all appointive officers and employees except such persons in the unclassified service as have been included therein for 6 months prior to the taking effect of the article shall be confirmed in the positions which they held when the article became effective. There are several obvious answers to this contention. In the first place, the

occurrence of the comma immediately preceding the word "and" is significant. If it had been the intention of the charter framers to make the clause "who shall have been such for the 6 months prior thereto" modify "those in the unclassified service" neither the comma nor the conjunctive "and" should have been used. In this event the sentence would have read "All appointive officers, etc., excepting those in the unclassified service as hereinbefore set forth in this article who shall have been such for the 6 months prior thereto, etc., shall be confirmed." The insertion of the conjunctive "and" preceded by the comma is clearly indicative of an intention that the clause "who shall have been such, etc.", shall refer back beyond the exception which is marked off by commas to that portion of the sentence which precedes the exception, viz., "All appointive officers and employees." From the viewpoint of sentence structure alone, therefore, petitioner's contention is untenable. However, syntax of itself should not be held to afford the sole key to the problem. We are here dealing with the proper interpretation of a most important charter provision which has to do with the operation of a certain governmental system which is denominated "civil service". No observation need here be made with respect to the avowed purpose of this system. Its purpose is too familiar to require comment. Concededly the scope of the system and its operation in any particular instance is to be determined from the law which establishes it as part of the governmental machinery. In this instance the electors of the county of San Diego chose to include the system of civil service as a part of the machinery of their county government and various provisions relating to the system were therefore written into the charter and form a part of that instrument. It is to these provisions then that we must turn for an explanation and definition of the scope and operation of civil service as it exists in the county of San Diego. Examination of those provisions of the charter which refer to civil service discloses that section 78 provides that the civil service of the county is divided into two classes which are denominated unclassified and classified. This same section specifies that all elective officers, together with their chief deputies, appointive boards, and a number of confidential investigators or deputies in designated departments shall form the unclassified service and that all positions not specifically in-

cluded in the unclassified service shall comprise the classified service. Section 79 provides that the Civil Service Commission shall prescribe and enforce rules for the classified service which shall effect the standardization and classification of all positions in the classified service. It is apparent, therefore, that it was the intention of the charter framers that all positions in the unclassified service should be exempted from the operation of civil service regulations and that the system should be confined exclusively to the classified service. Since this is true it is evident that the provision in section 81 which mentions the six months' period of prior employment must refer to appointive officers and employees in the classified service of the county and that it has no relation whatever to the unclassified service.

Having arrived at the conclusion that the six months' prior service provision refers to ''appointive officers and employees'' in the classified service and constitutes a limitation upon the power of the Civil Service Commission to confirm such officers and employees in their positions and to certify them therein without examination one further question is presented for determination. The trial court drew the legal conclusion that inasmuch as the petitioner had been appointed a deputy county clerk and at the time of his appointment as deputy sheriff on January 7, 1935, held an unrevoked written appointment to the former office he thereby became entitled to be confirmed in the position of deputy sheriff and to be certified as such without examination at the time the civil service amendment to the county charter went into effect on July 1, 1935, although obviously he then lacked seven days of completing the six months' period of service as a deputy sheriff. It is our opinion that the conclusion thus drawn was incorrect. That portion of section 81 which is applicable to the situation provides that ''all appointive officers and employees . . . at the time this article shall take effect . . . and who shall have been such for six months prior thereto . . . shall be confirmed in such positions and shall be certified . . . without examination, etc.'' We think that this language constitutes a mandate to the Civil Service Commission to confirm an appointive officer or an employee in the classified service who at the time article XVII took effect had held some one definite position in such service for a period of six months prior to the effective date of the

article in the same position which said officer or employee had occupied during the six months' period. We are impelled to this view because of our opinion that the manifest reason for inserting the six months' provision is that it may be assumed that an individual who has been performing a definite kind of work for six months will have demonstrated his aptitude to continue to perform this same work. The purpose of the examinations which section 79 of the charter declares shall be provided by the rules to be adopted by the Civil Service Commission is clearly stated in subdivision (b) of the aforesaid section. The exact language there used is as follows: ''For the preparation and holding of open competitive examinations in order to test the relative fitness of all applicants for appointment to the classified civil service, and to create eligible lists of all successful candidates in the order of their standing.'' It is significant that this same subdivision provides that ''the head of the office, board or commission having the appointing power shall be consulted by the civil service commission in preparing such examination, and all questions or portions of any such examination relating to the special qualifications and knowledge required to fill any position shall be compiled by the civil service commission or its chief examiner and in part upon such topics as shall be suggested by the head of the office, board or commission, for whose use any eligible list is to be created by any such examination''. It is evident, therefore, that the object of the examinations which are thus provided to be given is to test the fitness of applicants for some particular position. Obviously, therefore, if certain officers and employees in the classified service are to be exempted from the necessity of participating in these examinations the exemption is granted because it is assumed that any such officer or employee has sufficiently demonstrated his capacity to perform properly the particular duties of the particular position he holds through his prior performance of such duties for a reasonable period of time so that a further test of his fitness to hold the position is unnecessary.

We are the more contrained to the above-stated opinion in so far as the petitioner herein is concerned by reason of certain language which appears in the second paragraph of section 81 of the charter as pleaded in the petition for the writ. It is there declared as follows: ''All employees now

authorized by law to be employed in any county office for a portion of each year, or during certain seasons of the year, who shall have been in the employ of the County of San Diego for two successive seasons immediately prior to the time this Article takes effect, shall be included in the classified civil service and shall be forthwith certified by the Commission and shall be eligible for appointment to such seasonal positions without examination so long as they shall remain upon the certified or eligible list of the Commission.'' As heretofore pointed out, the evidence which was produced upon the hearing of the petition demonstrated that the petitioner's employment which commenced on May 11, 1934, was purely temporary or seasonal. The last-quoted language is therefore peculiarly applicable to him and indicates conclusively that his right to be confirmed in a position without examination is confined to his eligibility for appointment to the same character of employment in which he was engaged during the year 1934 which was seasonal employment. As to this it may be remarked that petitioner did not by this proceeding seek to be confirmed in a position of this character and made no sufficient showing of his eligibility for appointment to such a position.

The following language from the decision in *Rodrigue v. Rogers, supra,* is pertinent to the situation presented in the instant proceeding: ''There is no warrant in the charter for the position that by an appointment to a position in the department of elections plaintiff became entitled to hold a similar or any position in any other office or department of the municipal government.''

The judgment is reversed. Upon the going down of the *remittitur* the trial court is directed to vacate the peremptory writ of mandate and to enter judgment in conformity with the views herein expressed.

Barnard, P. J., concurred.